JS-6, O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KARLA VILLA,<br><br>     Plaintiff,<br><br> v.<br><br>APPLIED MEDICO-LEGAL SOLUTIONS RISK RETENTION GROUP, INC., AND DOES 1 THROUGH 50,<br><br>     Defendants. | Case No.: 2:22-cv-06913-MEMF (AFMx)<br><br>**ORDER GRANTING DEFENDANT APPLIED MEDICO-LEGAL SOLUTIONS RISK RETENTION GROUP, INC.'S MOTION TO COMPEL ARBITRATION [ECF NO. 10]** |

  Before the Court is the Motion to Compel Arbitration filed by Defendant Applied Medico-Legal Solutions Risk Retention Group, Inc.[1] ECF No. 10. For the reasons stated herein, the Court hereby GRANTS the Motion and STAYS all litigation in this case pending the outcome of the arbitration proceedings.

/ / /

/ / /

---

[1] It appears to the Court that the Defendant's name is "Applied Medico-Legal Solutions Risk Retention Group, Inc.," but it appears that the case was filed in the name of "Applied Medico-Legal Solutions Risk Retention Group Inc." (without a comma). The Court will leave the caption as is but will refer to the Defendant with the comma.

1

I.  **Factual Background**[2]

This case began with a doctor's sexual assault of his patient—which led to an insurance coverage dispute between the patient, on the one hand, and the doctor's insurer, on the other.

Plaintiff Karla Villa ("Villa") is a resident of Los Angeles, California, and a former patient of Dr. Jeko Behfarin ("Behfarin"). Tort Compl. ¶¶ 1, 8. Behfarin is a physician employed by Performance Care Sports Medicine & Rehabilitation Center ("Performance Care"). *Id.* ¶ 2. Defendant Applied Medico-Legal Solution Risk Retention Group, Inc. ("AMS") is a medical professional liability insurer. Mot. at 6.[3]

### A. Behfarin Sexually Assaults Villa, Which Leads to a Tort Action in Los Angeles Superior Court

On or about January 6, 2017, Villa visited Behfarin at Performance Care in Toluca Lake, California for a consultation for treatment relating to injuries Villa sustained in a car accident. Tort Compl. ¶ 8; Opposition to Motion to Compel Arbitration, ECF No. 19 ("Opposition" or "Opp'n"), at 6. During the appointment, Behfarin touched Villa inappropriately and without her consent: "rubbing her back, then pulling down her underwear and using his hands, spread [Villa's] butt cheeks apart and rubbed down to her anus," and touched Villa in her bikini and genital areas. Tort Compl. ¶ 8.

On January 4, 2018, Villa filed a tort action in Los Angeles Superior Court against Dr. Behfarin and Performance Care alleging the five following causes of action arising from the injuries she sustained from Behfarin's actions: (1) sexual battery; (2) intentional infliction of emotional distress ("IIED"); (3) negligence against Behfarin; (4) negligence against Performance Care; and (5)

---

[2] Unless otherwise indicated, the following facts are derived from the complaint in this case and the complaint in the underlying tort action by Plaintiff Karla Villa against Dr. Jeko Behfarin in Los Angeles Superior Court. The complaint in this case is found at ECF No. 1-1, and will be referred to as "Complaint" or "Compl." It is Exhibit A to the Defendant's Notice of Removal, ECF No. 1. The complaint in the underlying tort action is First Amended Complaint for Damages in Case Number BC689183. It is Exhibit A to the Complaint, ECF 1-1, (which itself is Exhibit A to the Notice of Removal). It will be referred to as the "Tort Complaint" or "Tort Compl." For the purposes of this Motion, the Court treats these factual allegations as true, but at this stage of the litigation, the Court makes no finding on the truth of these allegations and is therefore not—at this stage—finding that they are true.

[3] Citations to "Motion" or "Mot." are to the Memorandum of Points and Authorities, ECF No. 10-1, which was filed in support of the Motion to Compel Arbitration, ECF No. 10.

2

sexual harassment pursuant to Cal. Civ. Code § 51.9. *See generally* Tort Compl. Behfarin denied all allegations of sexual misconduct. Compl. ¶ 12.

### B. AMS and Behfarin's Insurance Policy

Behfarin was covered by a professional liability policy issued by AMS from July 30, 2017, to June 5, 2018 (the "Policy"). Mot. at 6. The Policy contains the following arbitration provision:

> **O. Arbitration and Interpretation**
>
> Any dispute between **you** and **us** relating to this **policy** will be resolved by arbitration in accordance with the rules and procedures established by the American Arbitration Association.

*See* Policy Form AMS002 (3/15) Professional Liability Policy, ECF No. 10-3 ("Policy"), at 11–12 ("Arbitration Provision").

The Policy also contains a "Physical Professional Liability Coverage Part." Policy at 18. That Coverage Part includes the following exclusions provision:

> **D. Exclusions**
>
> We will not defend or pay under this Coverage Part for:
>
> . . . .
>
> 6. Any **injury** or **damages** resulting from **your** liability arising out of **your** own **sexual misconduct** or the **sexual misconduct** of those for whom **you** are legally responsible. This exclusion applies whether the **sexual misconduct** is done under the guise of treatment or otherwise and with or without the consent of the individual. However, **we** will defend any **claim** until such time as there is an admission of such activity, relations or contact or they have otherwise been found to have occurred in **our** reasonable judgment. . . . .

Policy at 22–23.

In addition, the Policy contains a Sexual Misconduct & Molestation Expense Reimbursement Endorsement ("Sexual Misconduct Endorsement" or "Endorsement"), ECF 10-3, which states as follows:

> [AMS] agrees to reimburse an **Insured** for **Legal Expense** incurred by the **Insured** because of an **Insured Event Instituted** against such **Insured** during the **Policy Period** . . . .

> . . . .
>
> **Maximum Amount Reimbursable per Insured Event:** $25,000
>
> . . . .
>
> [AMS] does not assume any duty to defend the **Insured** under this Endorsement . . . .
>
> . . . .
>
> Insured Event shall mean and shall be limited to the **Institution** of any:
> a) written demand for payment; or
> b) lawsuit in a court of general jurisdiction
> against an **Insured** by or on behalf of any person alleging bodily injury and/or personal injury because of:
> a) the actual or threatened abuse or molestation of such person while in the care, custody or control of any **Insured** . . . .

Endorsement at 1–3. The Endorsement also contains a separate arbitration clause ("Endorsement Arbitration Provision") which states, "Any dispute between the **Insured** and [AMS] relating to this Endorsement shall be submitted to binding arbitration in accordance with the then current rules of the American Arbitration Association . . . ." *Id.* at 4.

The Policy further contains an Assignment and Transfer clause, Policy at 10, and a provision regarding "Lawsuits Against Us," Policy at 8.

### C. Resolution of Villa's Tort Action Against Behfarin in Los Angeles Superior Court

Although under the Policy's terms, AMS was obligated to defend Behfarin against Villa's fourth cause of action—because negligence is covered under the Policy—AMS refused to defend Behfarin against the lawsuit. Compl. ¶¶ 13–14. On September 16, 2020, Villa served Behfarin with an Offer to Compromise pursuant to California Code of Civil Procedure section 998 ("Offer to Compromise" or "Offer"), offering to settle the Tort Action for the Policy demand limit of $1 million. Compl. ¶¶ 13–15; Opp'n at 7. AMS did not respond to the Offer, and it subsequently expired. Compl. ¶ 15.

The parties entered into court-ordered settlement negotiations, which resulted in a settlement agreement ("Settlement Agreement," Exhibit C to Complaint, ECF No. 1-1) in December 2020. *Id.* ¶ 16. The Settlement Agreement contained a number of recitals regarding AMS's reimbursement

pursuant to the Endorsement and its failure to otherwise defend or indemnify Behfarin. Settlement Agreement ¶¶ 8–15. Pursuant to the Settlement Agreement, the parties agreed under California Code of Civil Procedure section 638 to refer the matter to a referee—in this case, a retired judge—who would issue a statement of decision. Settlement Agreement ¶ 17. The parties further agreed that "the statement of decision will be a final and binding adjudication of all issues in the Lawsuit and that a Judgment will be entered with the Court thereon." *Id.* The Agreement explicitly stated that Behfarin did not intend to appear at the hearing before the referee or otherwise defend himself in light of the costs of a defense and the fact that AMS refused to defend or indemnify him. *Id.*

Finally, the parties agreed that Villa would not "execute against the personal assets of Behfarin" in exchange for Behfarin assigning "any and all of his rights against [AMS] for its refusal to provide a defense." Compl. ¶¶ 16, 24; Settlement Agreement ¶¶ 18, 20.

The reference proceeding returned an award in favor of Villa for sexual battery, IIED, negligence, and sexual harassment. Compl. ¶¶ 17, 28–31. On July 27, 2022, the trial court entered a final judgment in the amount of $4,156,429.44 in favor of Villa. *Id.* ¶ 18. In accordance with the terms of the Settlement Agreement, rather than executing the judgment against Behfarin, on or about July 22, 2022, Villa sought to have AMS pay the full judgment award. *Id.* ¶ 21. To date, AMS has failed to pay Villa and failed to defend Behfarin against Villa's negligence claim. *Id.*

## II.    Procedural Background

The instant action was brought as a result of AMS's refusal to fulfill the judgment amount and defend Behfarin's negligence claim. *See generally* Compl. On August 30, 2022, Villa filed the instant action in Los Angeles Superior Court against AMS alleging the following four causes of action: (1) Declaratory Relief re Duty to Defend; (2) Declaratory Relief - Duty to Indemnify - Breach of the Implied Covenant of Good Faith and Fair Dealing; (3) Third Party Judgment Creditor Against Insurer (Insurance Code 11580); and (4) Insurance Bad Faith re Failure to Defend Pursuant to Assignment of Rights. *See* Compl. Villa seeks declaratory judgment, compensatory damages, the sum of $4,156,429.44 (final judgment amount) and interest thereon, punitive and exemplary damages, and attorneys' fees and costs. Compl. at Prayer ¶¶ 1–7. On September 23, 2022, AMS properly removed this action to this Court, Notice of Removal, ECF No. 1, and on September 30,

2022, the instant Motion to Compel Arbitration was filed. *See* Mot. The Motion was fully briefed as of October 21, 2022. *See* Opp'n; ECF No. 20 ("Reply"). The Court heard oral argument on December 15, 2022.

### III. Applicable Law

Under Section 2 of the Federal Arbitration Act ("FAA"), arbitration clauses in contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)). "If an ordinary procedural rule—whether of waiver or forfeiture or what-have-you—would counsel against enforcement of an arbitration contract, then so be it. The federal policy is about treating arbitration contracts like all others, not about fostering arbitration." *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022).

"[T]he party seeking to compel arbitration[] has the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). In determining whether to compel arbitration, the court must consider two gateway factors: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). Moreover, arbitration agreements may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Concepcion*, 563 U.S. at 343 (internal quotation marks omitted (citing *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996))). The Act "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

A petition to compel arbitration is to be heard in the manner of a motion; factual issues are submitted on affidavits or declarations, or on oral testimony at the court's discretion. *Strauch v. Eyring*, 35 Cal. Rptr. 2d 747, 748 (Cal. Ct. App. 1994).

## IV. Discussion

AMS moves to compel Villa to arbitrate her claims against it on the ground that, as an assignee of the Policy, she is bound by the same Policy terms as Behfarin, including the obligation to arbitrate. *See* Mot. at 5, 7, 10; Reply at 9–10.

AMS's argument rests on two main premises. First, AMS argues that Villa must be compelled to arbitrate because "the Policy includes a binding arbitration clause, which compels Dr. Behfarin to arbitrate any disputes relating to the Policy." Mot. at 5. Second, AMS argues that Villa is further bound to arbitrate because her claims against AMS "arise from and depend on the extent of coverage afforded by the Policy," meaning as she seeks to "reap the benefits" of the Policy, she is also beholden to the Policy's obligations. *Id.*

### A. Villa is a valid assignee of the Policy.

In their briefing and at the hearing in this matter, the parties agreed that Behfarin assigned his interest in the Policy to Villa, and that Villa is a valid assignee. *See* Mot. at 5 ("As Plaintiff alleges that she is proceeding by way of assignment, she steps into the shoes of Dr. Behfarin and is obligated to honor the Policy's arbitration provision."); Compl. ¶ 22 ("By virtue of Villa's status as a third party beneficiary of the insurance contract between Applied Medico and the insured, Applied Medico also owes directly to Villa a duty of good faith and fair dealing in connection with payment of the judgment in the State Court Action."); *id.* ¶ 24 ("Villa is informed and believes and thereon alleges that on or about December 22, 2020, Behfarin and Villa entered into a written assignment of rights whereby Behfarin assigned his rights and interests against Applied Medico, arising out of Applied Medico's refusal to provide a defense in the State Court Action."); *id.* ¶ 31 ("On or about July 22, 2022, Villa, as a judgment creditor and third party beneficiary under the [P]olicy . . . made a demand for payment of indemnity benefits under the [P]olicy that were due and owing.").

/ / /

**B. The Policy Contains an Agreement to Arbitrate, and as an Assignee, that Agreement to Arbitrate Applies to Villa.**

In evaluating whether parties must be compelled to arbitrate, the Court must first consider "the existence of a valid, written agreement to arbitrate." *Brennan*, 796 F.3d at 1130. Here, the parties do not dispute—nor could they—that the Policy contains a blanket arbitration provision as well as an arbitration provision in the Endorsement. The first question before this Court, however, is whether *Villa* is a party to that agreement. Villa argues that the arbitration agreement does not apply to her because she is a non-signatory to the Policy. Opp'n at 14, 15–16.

"Generally, one must be a party to an arbitration agreement to be bound by it or invoke it." 6 Cal. Jur. 3d *Arbitration & Award* § 40. The parties do not dispute the validity of the Policy entered between Behfarin and AMS. Nor do they dispute that—without the assignment—Villa—as a former patient of Behfarin—does not fall under the umbrella of an "Insured" as defined by the Policy and thus is not covered under the Policy's terms without the assignment.

However, a non-signatory to an agreement may become beholden to the agreement's requirements under the theory of assignment of right of the contract. "An assignment of a right is a manifestation of the assignor's intention to transfer it by virtue of which the assignor's right to performance by the obligor is extinguished in whole or in part and the assignee acquires a right to such performance." *Cal. Ins. Guarantee Ass'n v. Workers' Comp. Appeals Bd.*, 138 Cal. Rptr. 3d 24, 29–30 (Cal. Ct. App. 2012) (quoting Restatement (Second) of Contracts § 317(a) (Am. L. Inst. 1981)). Under California law, "whether a contract is assignable depends upon its nature and terms. Ordinarily, either a bilateral or unilateral contract is assignable unless it calls for some personal quality of the promisor, or unless it expressly or impliedly negatives the right to assign." 1 Witkin, Summary of Cal. Law (11th), Contracts § 732 (2022). A contract may be non-assignable if the contract contains express terms providing that it may not be assigned or includes provisions detailing the specific terms under which it may be assigned. *See id.* § 733.

The Settlement Agreement assigned Behfarin's interest under the Policy to Villa. The assignment provision of the Settlement Agreement provides:

> 18. <u>Assignment of Behfarin's Claims</u>. Behfarin hereby assigns, transfers, conveys, relinquishes, or grants to Villa any and all assignable rights, claims, interest, or causes or action that Behfarin may now have acquired against Applied Medico, its

agents, employees, successors, assigns, subsidiaries, related entities, or others based on arising from or related to Applied Medico's failure to defend, failure to settle, and/or failure to indemnify Behfarin in the Lawsuit as set forth above, except any rights, claims, or interests for emotional distress or punitive damages against Applied Medico based on said acts, which rights, claims, or interests are otherwise not assignable (the "Assignment of Rights").

In light of the valid assignment of Behfarin's rights under the Policy to Villa, Villa, as an assignee, "stands in the shoes" of Behfarin and is thus held to the same obligations under the Policy as those originally imposed upon Behfarin—including the obligation to arbitrate.

### C. The arbitrability of this dispute is to be determined by the arbitrator.

As discussed, the first question before this Court is whether there is a valid agreement to arbitrate between Villa and AMS. As discussed above, there is.

The second question before this Court is whether that agreement to arbitrate applies to *this* dispute. Villa argues that the agreement to arbitrate does not apply to this dispute because of AMS's bad faith failure to defend Behfarin in the Tort Action. *Id.* at ¶ 14. According to Villa, AMS's alleged refusal to defend Behfarin in the Tort Action qualifies as bad faith and governing law dictates that such claims are not subject to an arbitration provision and bad faith operates as a waiver of enforcement of the arbitration provision. *See generally* Opp'n.

When sophisticated parties incorporate the rules of an arbitration organization into a commercial contract, and that organization's rules make arbitrability subject to arbitration, the parties have agreed to arbitrate arbitrability. *See Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074–75 (9th Cir. 2013). The Ninth Circuit has explained that incorporation of such rules is "clear and unmistakable evidence that the parties agreed the arbitrator would decide arbitrability." *Id.* at 1075. Other circuits to consider the question have reached the same conclusion. *See id.* at 1074 (collecting cases); *see also ROHM Semiconductor USA, LLC v. MaxPower Semiconductor, Inc.*, 17 F.4th 1377, 1383 (Fed. Cir. 2021) ("Virtually all courts to consider the question . . . have concluded that, in contracts between sophisticated parties, incorporation of rules with a provision on the subject is normally sufficient 'clear and unmistakable' evidence of the parties' intent to delegate arbitrability to an arbitrator." (discussing *Oracle*)).

Here, all parties to the Policy were sophisticated. The *Oracle* Court distinguished "consumer contracts" from "commercial contracts" with "sophisticated parties," and limited its holding to the latter. *Id.* at 1075. The Policy is a commercial contract between sophisticated parties, so *Oracle* applies to it. *See id.*

The Policy and the Endorsement incorporated the rules of the American Arbitration Association ("AAA"). The blanket Arbitration Provision states that "[a]ny dispute between **you** and **us** relating to this **policy** will be resolved by arbitration in accordance with the rules and procedures established by the American Arbitration Association." Arbitration Provision (emphasis in original). Similarly, the Endorsement states that "[a]ny dispute between the Insured and the Company relating to this Endorsement shall be submitted to binding arbitration in accordance with the then current rules of the American Arbitration Association." Endorsement at 4.

The AAA rules grant the power to rule on the arbitrability of "any claim or counterclaim" to the arbitrator. American Arbitration Ass'n, *Commercial Arbitration Rules and Mediation Procedures R-7(a)*, (Sept. 1, 2022), https://adr.org/commercial ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim of counterclaim.").[4]

The *Oracle* Court considered the following provision of the UNCITRAL rules: "The arbitral tribunal shall have the power to rule on its own jurisdiction, including any objections with respect to the existence or validity of the arbitration agreement." *Oracle*, 724 F.3d at 1073. Here, the AAA rules state—just as in *Oracle*: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim of counterclaim." American Arbitration Ass'n, *supra*.. *Oracle* controls this issue, and the AAA rules incorporated into the Policy make the

---

[4] In the Motion, AMS points to the 2013 version of the rules. They appear to be the same as the 2022 with respect to this provision.

question of arbitrability subject to arbitration.[5] *See Oracle*, 724 F.3d at 1073-74. Accordingly, any questions on the arbitrability of any disputes must be arbitrated.

There is ample case law in support of this position. "[T]he question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. at 943 (internal citations omitted). "No universal one-size-fits-all rule allocates that question to one decision maker or the other in every case. Rather, 'who decides' is a matter of party agreement." *Sandquist v. Lebo Auto., Inc.*, 376 P.3d 506, 511 (Cal. 2016). Put differently, whether the court or the arbitrator decides arbitrability is "'an issue for judicial determination unless the parties *clearly and unmistakably* provide otherwise.'" *Howsam,* 537 U.S. at 83 (emphasis added) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)). "In other words, there is a presumption that courts will decide which issues are arbitrable; the federal policy in favor of arbitration does not extend to deciding questions of arbitrability." *Oracle*, 724 F.3d at 1072.

At the hearing, Villa conceded that the case law does not support her argument that AMS's alleged failure to defend in the Tort Action should imply bad faith as it relates to the applicability of the Provision to Villa. During the hearing, Villa conceded that all three cases relied upon in the Opposition—*Janopaul + Block Cos. v. Superior Court*, 133 Cal. Rptr. 3d 380 (Cal. Ct. App. 2011); *Davis v. Blue Cross N. Cal.*, 600 P.2d 1060 (Cal. 2010); and *Murphy v. Allstate Ins. Co.*, 147 Cal. Rptr. 565 (Cal. Ct. App. 1978)—do not support this argument, let alone relate to the circumstances underlying the instant action.

As AAA Rule 7(a) requires that the scope of arbitration be submitted to the arbitrator, it is clear that Villa's arguments about the enforceability or validity of the arbitration agreement in light of AMS's alleged bad faith are not within this Court's power to decide.

---

[5] Although unclear from the Opposition, it appears that Villa contests the applicability of the Endorsement to the entirety of the Policy, implying that Villa's third and fourth causes of action in the Tort Action for negligence are exempt from arbitration. *See* Opp'n at 12–16. But as the blanket Arbitration Provision requires that all claims falling under the Policy be put to arbitration, the overall applicability of the Endorsement is not relevant to the Court's analysis.

Accordingly, this Court will not evaluate the merits of Villa's arguments regarding whether any of her claims must be arbitrated; the arbitrator shall do so.

## CONCLUSION

For the foregoing reasons, the Court hereby GRANTS the Motion to Compel Arbitration. Litigation of the claims in the Complaint are STAYED in their entirety pending the outcome of the arbitration proceedings. Accordingly, this action is placed on the Court's inactive calendar pending the arbitration process. The parties shall file a joint report every ninety (90) days, starting from the date of this Order. The parties are also directed to jointly notify the Court within forty-eight (48) hours of the conclusion of the arbitration proceeding.

**IT IS SO ORDERED.**

Dated: August 28, 2023

MAAME EWUSI-MENSAH FRIMPONG
United States District Judge